**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Robert J. KNORR, Defendant–Appellant.**

**Nos. 90–2422, 90–3267.**

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 22, 1991.

Decided Sept. 16, 1991.

Rehearing Denied Oct. 29, 1991.

R. Jeffrey Wagner, Asst. U.S. Atty. (argued), Stephen A. Ingraham, Asst. U.S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Jeffrey B. Steinback (argued), Marc W. Martin, Genson, Steinback & Gillespie, Chicago, Ill., for defendant-appellant.

Before CUMMINGS, RIPPLE and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Robert J. Knorr was indicted on two counts involving drug offenses. On the day the case was scheduled to go to trial, Knorr agreed to plead guilty to one count of conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846. After the requisite hearing pursuant to Federal Rule of Criminal Procedure 11, the district judge accepted Knorr's guilty plea and set the case for sentencing on October 13, 1989. Knorr was not taken into custody following his admission of guilt.

Later, after he had reviewed the presentence report, Knorr filed various objections to it through his counsel. On October 4, 1989, Knorr filed a motion to permit withdrawal of his guilty plea. Knorr did not show up for sentencing on October 13, 1989. Nearly eight months later, on May 25, 1990, the United States Marshal Service located Knorr in Chicago and arrested him on a charge of failure to appear. Knorr was returned to the district court in Wisconsin and sentencing was reset for June 14, 1990. New counsel was retained by Knorr and on June 12 Knorr requested the court to delay his sentencing. The district court granted this motion and reset sentencing for June 20, 1990.

On June 18, 1990, Knorr filed a renewed motion to permit withdrawal of his guilty plea. The next day, Knorr again moved to continue his sentencing. On June 20, the district judge heard argument on both motions and denied them. The district judge then applied the Sentencing Guidelines and imposed a sentence of 125 months imprisonment.

On August 7, 1990, Knorr pleaded guilty to the charge of failure to appear and the district judge sentenced Knorr to 22 months imprisonment, to be served consecutive to the sentence on the narcotics offense.

In this consolidated appeal, Knorr argues that the district court erred in: denying his motion to permit withdrawal of his guilty plea; denying his second motion to continue sentencing; and refusing to grant him an offense level reduction for acceptance of responsibility. He also argues he is entitled to be resentenced because the court violated the requirements of Federal Rule of Criminal Procedure 32.

■ The first issue we address is whether the district court erred in denying Knorr's motion to permit withdrawal of his guilty plea prior to sentencing. Federal Rule of Criminal Procedure 32(d) notes that if the motion to permit withdrawal of the plea is made prior to sentencing, the court "may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason." However, the defendant has no absolute right to withdraw the guilty plea. *United States v. McFarland,* 839 F.2d 1239, 1241 (7th Cir.), *cert. denied,* 486 U.S. 1014, 108 S.Ct. 1750, 100 L.Ed.2d 212 (1988). The decision of whether to permit a plea withdrawal rests within the sound discretion of the district court, and we will reverse that decision only upon a showing of an abuse of that discretion. *Id.; United States v. Scott,* 929 F.2d 313, 315 (7th Cir.1991).

■ Knorr alleges that his plea was not knowingly entered, and thus the district court did abuse its discretion in denying his motion. This was so, alleges Knorr, because he did not understand that he might

be subject to a four-level increase in the offense level for occupying a leadership position in the drug organization. The district judge ultimately gave Knorr a three-level increase, pursuant to United States Sentencing Guidelines § 3B1.1(b), concluding that Knorr occupied a managerial role in the offense. Knorr says his guilty plea was based on his assumption that his base offense level under the Sentencing Guidelines would be 28 and that he would get a two-level reduction for acceptance of responsibility. Knorr alleges that neither his attorney nor the plea agreement made any reference to such an increase in the offense level for his role in the crime.

■ A district judge when taking a guilty plea must inform the defendant of the maximum statutory penalty for the offense involved. However, the judge is not required to, and often cannot, at the time the plea is tendered, inform the defendant of the effects the application of the Sentencing Guidelines will have on the sentence. Generally, the fact that a defendant underestimated his sentence when entering his plea is not a fair and just reason to permit him to withdraw that guilty plea. *Scott*, 929 F.2d at 315; *United States v. Alvarez–Quiroga*, 901 F.2d 1433, 1438–39 (7th Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 203, 112 L.Ed.2d 164 (1990).

During the 1989 hearing in which Knorr changed his plea to guilty, the district judge took pains to inform Knorr of the various aspects involved in the judge's sentencing decision. Knorr acknowledged he had read and understood the nature of the charges in the indictment. He also indicated that he had gone over the charges with his attorney. Knorr stated in response to the judge's inquiry that the maximum sentence for his offense was 20 years, the maximum fine was $1 million, and he admitted that he would be subject to a three-year term of supervised release. Knorr acknowledged that he understood that punishment for the offenses was governed by the Sentencing Guidelines, and that he and his attorney had discussed the impact of the Guidelines on his case.

Knorr also acknowledged that he understood that the court would not be able to determine the Guidelines application until after completion of the presentence investigation report. Knorr stated he understood that both he and the government would be given an opportunity to challenge the facts on which the Guideline determinations were predicated. Knorr stated he understood that absent some basis for deviation, the district judge was required to sentence him within the Guidelines. He also acknowledged that with facts in mitigation or aggravation the court could impose a sentence above or below the Guidelines. Knorr indicated that he was aware that the government would have the right to supply the probation department information regarding his conduct relating to the offense. Knorr stated he was fully aware of the fact that the court was not required to accept the sentencing recommendations of either the government or Knorr's counsel. Knorr stated he understood the court was not a party to any negotiations that led up to the plea agreement.

Finally, Knorr stated he understood that if the court imposed a sentence more severe than he expected, that fact by itself would not be sufficient to enable Knorr to get the plea set aside.

As we have stated, rational conduct requires that voluntary responses made by a defendant when entering a guilty plea be binding. *McFarland*, 839 F.2d at 1242; *United States v. Ellison*, 835 F.2d 687, 693 (7th Cir.1987). Knorr apparently chose to disregard the court's explicit admonitions and was upset when his personal estimate of his sentencing range was less than that permitted by the application of the Guidelines. But there is no indication that he did not understand the information and cautionary instructions the court imparted to him. Contending, in the face of the judge's admonitions, that the sentencing range calculated from the presentence report was higher than Knorr had estimated provides no basis for the withdrawal of the guilty plea.[1] *Scott*, 929 F.2d at 315.

1. The government might have provided more     detailed information in its offer of proof to

Knorr next argues that the district court violated Fed.R.Crim.P. 32(c)(3), which provides that the presentence report must be disclosed to a defendant and his counsel ten days prior to sentencing, "unless this minimum period is waived by the defendant." He also claims that the district court's denial of his motion to delay his sentencing deprived him of due process of law.

■ With regard to the alleged violation of Rule 32(c)(3), the presentence report was made available to Knorr and his then-counsel in September, 1989—nine months prior to his sentencing. That Knorr retained a different attorney nine days before the rescheduled sentencing date does not restart the ten-day clock.

■ Moreover, we have held that by participating in a sentencing without an objection based on the ten-day requirement, the defendant waives the minimum period requirement of Fed.R.Crim.P. 32. *United States v. Busche,* 915 F.2d 1150, 1151 (7th Cir.1990). Knorr did not object on these grounds at sentencing, and as we noted in *Busche,* this election is conclusive. *Id.*

■ We now address the due process issue regarding the denial of Knorr's motion for continuance of his sentencing. As we said in *United States v. Rone,* 743 F.2d 1169 (7th Cir.1984), the due process right at stake here is the right to a "fair sentencing procedure which includes the right to be sentenced on the basis of accurate information." *Id.* at 1171. We noted in *Rone* that parts of Rule 32(c) of the Federal Rules of Criminal Procedure were intended to protect the due process right with respect to sentencing. Given human frailty, the guarantee of due process in this context is a fair sentencing hearing, not a perfect one. *United States v. Agyemang,* 876 F.2d 1264, 1271 (7th Cir.1989). The standard we apply in reviewing the denial of a motion for continuance is whether the district

court abused its discretion. *United States v. Rasmussen,* 881 F.2d 395, 400 (7th Cir. 1989). This case-by-case determination is made in light of the circumstances presented, particularly the reasons presented to the district court in support of the continuance at the time the motion is denied. *Id.*

■ Here, the denial of the motion for continuance of the rescheduled sentencing date came after the court had already granted Knorr's new counsel a one-week continuance. After hearing argument on the second motion for continuance, the court stated that there had been sufficient time given Knorr's counsel to evaluate the presentence report, and to determine whether Knorr had anything to add to the report. The court also noted that there did not appear to be anything in any supporting documents set forth by Knorr's counsel that indicated any specific matter that he wanted to pursue. Defense counsel did not present any specific dispute with the facts other than elaborating on those objections to the presentence report filed previously by prior defense counsel. The court then denied the motion.

In *United States v. Holguin,* 868 F.2d 201 (7th Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 97, 107 L.Ed.2d 60 (1989), the defendant raised a similar claim. In alleging a violation of due process, Holguin claimed that the court denied defense counsel adequate time to review the presentence report and rebut the government's version of the facts. Defense counsel's first look at the government's version of the facts in the presentence report came the night before the sentencing hearing— but defense counsel could have seen the report up to eight days prior to sentencing. Also Holguin told the court that he had both seen the report and discussed it with counsel. Because of the district court's familiarity with the record in the case and the fact that it had presided over the trial

establish the elements of the offense. This could have eliminated any questions about Knorr's role in the offense. Knorr would have heard the government's factual basis regarding his activities. The judge would have been able to inquire of Knorr as to his acceptance or rejection of his role. This, of course, is not a

requirement in taking a plea because only the factual elements of the offense must be established for the judge's determination of guilt. But such a procedure might have avoided the subsequent problems with which we are now faced.

for several days, we held that it was in a "unique position to assess the merits of counsel's request for additional time." *Id.* at 205.

Distanced as we are from the trial court it may appear to us that giving Knorr and his new counsel some additional time to attempt to present a separate version of events would have been a simple and— given Knorr's incarceration at the time— virtually painless way to avoid the constitutional challenges we now face. But the district court had firsthand experience with the proceedings leading up to Knorr's sentencing. Of greatest significance, the district judge was face to face with Knorr and his counsel during both the plea and sentencing. In his questioning of Knorr on both occasions, the district judge was in the optimum position to evaluate and assess the circumstances which affected Knorr's actions. From this "unique position," the district judge examined the relevant factors and determined that there was nothing to be gained by a second continuance. The mere possibility that some additional evidence would be obtained to further contest the nature of the defendant's role in the offense is insufficient to overcome our deference to the district judge in this area. Thus we will not second-guess his determination and say the district court abused its discretion in denying Knorr's second motion to continue the sentencing hearing.

█ Knorr makes a related argument that because he was not given the opportunity to present a version of events or review the presentence report "in depth" with counsel, the district court violated Federal Rule of Criminal Procedure 32, and Knorr must be resentenced. Federal Rule of Criminal Procedure 32(a)(1)(A) requires that prior to sentencing, the district court "determine that the defendant and defendant's counsel have had the opportunity to read and discuss the presentence investigation report." We have construed this as requiring the court at sentencing to obtain the answer to three questions: 1) whether the defendant has had an opportunity to read the presentence report; 2) whether the defendant and the defense counsel have

discussed the report; and 3) whether the defendant wishes to challenge any facts contained in the report. *Rone*, 743 F.2d at 1174.

At the sentencing hearing, the district court posed the proper questions as enunciated in *Rone*. Knorr indicated that he had an opportunity to review the presentence report. When asked whether he had an opportunity to discuss it with his attorney, Knorr initially answered "no." But then one of the defense counsel explained that another of the current defense team had spoken with Knorr on one occasion and that he had spoken to Knorr on several occasions by telephone. Knorr then clarified that while they had discussed the presentence report, some parts had not been discussed "in depth." Defense counsel then noted,

> [w]e discussed the presentence report, we discussed strategies as to how to handle his new case [the failure to appear charge] and how it impacts on the present proposed sentencing, and the possible motion to withdraw the guilty plea, and it must be obvious that I have some facility with some of those things because of my argument.

Defense counsel noted that he and the defendant "had a couple of discussions" on the impact of a specific issue on sentencing. Defense counsel also indicated that "we have spoken of these things, [Knorr] and I in an attempt to develop some direction, and we have not had a chance to finalize that."

The district court concluded that sufficient time had been made available to Knorr's new counsel to acquaint himself with the facts of the case. The court then asked whether there were any objections to facts contained in the presentence report. Defense counsel renewed the objections submitted in writing by Knorr's prior attorney. The court went through the contested matters, and concluded that there was no dispute regarding the specific facts supporting the enhancement for a managerial role. The court found that Knorr's actual claim was that the facts stated were insufficient to merit the enhanced penalty. The district court agreed with defense counsel to a certain extent and lowered the increase

to three, rather than the requested four, levels.

Given Knorr's responses to the questions posed by the district court, the factual dispute Knorr formulated and submitted through prior counsel, and the contacts Knorr had with new counsel regarding the presentence report, we find no violation of Fed.R.Crim.P. 32.

■ Finally, we address whether the district judge erred in denying Knorr a two-level reduction in offense level for acceptance of responsibility under § 3E1.1. The Application Notes recognize the sentencing judge's singular position in evaluating whether the defendant has accepted responsibility. As with other aspects of sentencing, we give "great deference" on review to this determination of the sentencing judge. U.S.S.G. § 3E1.1, comment (n. 5). This deference translates to a review on appeal only for clear error. *United States v. Sullivan,* 916 F.2d 417, 419 (7th Cir.1990).

The Sentencing Guidelines provide a two-level reduction for a defendant who "clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." U.S.S.G. § 3E1.1. The Application Notes for this section provide a non-exhaustive list of factors for the court to consider in making this determination. Here the district judge went through the list and determined whether each factor was applicable and whether it helped or harmed Knorr's position. We need focus on only one of these.

In this case the most obvious consideration in the Application Notes is "voluntary surrender to authorities promptly after commission of the offense." U.S.S.G. § 3E1.1 comment (n. 1(d)). Knorr fled and did not appear for sentencing. Over seven months later, when approached by U.S. Marshals, Knorr attempted to flee but was then apprehended without a struggle.

Knorr seeks to equate his conduct with an escapee who ultimately sees the error of his ways and voluntarily surrenders. Knorr relies on *United States v. Jimenez,* 897 F.2d 286 (7th Cir.1990), where the defendant was given a two-level reduction for acceptance of responsibility even though he

committed the crime of escape. Knorr also argues that a condition that is a necessary prerequisite to the commission of a crime cannot constitute an "enhancing factor" unless present to an excessive degree. But the present situation is different.

Here, Knorr pleaded guilty to the charge of failure to appear. This, unlike the crime of escape, is not an offense of a continuing nature. Knorr was to appear for sentencing on October 13, 1989. He did not do so. The commission of the crime was complete at that time. Knorr could have demonstrated his acceptance of responsibility by surrendering after that point, but he never did so. In fact, when the U.S. Marshals approached him, he attempted to flee. The district judge considered his flight—which was not a necessary prerequisite to commission of the crime—in making his determination. The district court observed that Knorr did not appear to be voluntarily surrendering. Although Knorr's conduct after arrest may have been of assistance to the authorities and thus constitute a factor for consideration in a reduction, we cannot say the district judge was clearly erroneous in determining that Knorr's conduct did not demonstrate acceptance of responsibility.

For the foregoing reasons, the conviction and sentence of Robert J. Knorr are AFFIRMED.