**UNITED STATES of America, Plaintiff,**

v.

**Chi Chak LEUNG, and Irving Chin, Defendants.**

**Nos. 90 CR 760–23, 90 CR 760–12.**

United States District Court,
N.D. Illinois, E.D.

Dec. 9, 1991.

John J. Scully, Waukegan, Ill., for U.S.

Margaret L. Paris, Paul A. Wagner, Chicago, Ill., and Michael B. Mann, Hillside, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

### STATEMENT OF FACTS

Defendants Chi Chak Leung and Irving Chin (also known as Chan Mong Chin and Chan Mong Chiu) were indicted by the United States as part of its investigation of an alleged illegal gambling operation and related activities conducted by the National On Leong Chinese Merchant's Association and its local affiliates. Defendant Chin pleaded guilty to Count II of the indictment at a hearing conducted on March 26, 1991. Defendant Leung pleaded guilty to Counts I, III and XXX at a hearing conducted on April 1, 1991. Before the court are the motions of both defendants to withdraw their pleas, pursuant to Fed.R.Crim.P. 32(d). Defendant Leung indicates he wishes to withdraw his plea to "at least, Count I and, if necessary, to all Counts."

Defendant Leung cites as grounds for withdrawal the wide cultural and language barrier which existed at the time his plea was accepted which, he contends, prevented him from knowing or understanding the consequences of his plea or the nature of the charges he pleaded to. In support of this contention, Dr. Leung cites to several examples of this barrier which manifested themselves at his plea hearing and later during his trial testimony. Dr. Leung contends that at his plea hearing he stated he did not understand English and was dependent on an interpreter, and that he did not know how the American legal system worked. He also contends he stated that his job for the On Leong was to cash chips and that he didn't know anything else. Although he admits stating he discussed the nature of the charges he was pleading to with his attorney [1] prior to the hearing, he contends he did not admit to understanding them. Dr. Leung also contends he had difficulties with his interpreter at the hearing, which the court acknowledged.

At trial, Dr. Leung testified that he was totally dependent on his attorney at his hearing to inform him of the consequences of his plea agreement and, had he truly understood the consequences of the agreement, he would not have agreed to it even with a gun to his head. Dr. Leung also testified to his previous problems with interpreters, and reiterated his earlier claim that he "just worked there." He also testified he only had general conversations with his prior attorney before his plea hearing as to the consequences of application of the Federal Sentencing Guidelines to his case. Dr. Leung has also submitted an affidavit averring his innocence as to Count I of the indictment, and that he did not fully understand the nature of what he had done until he was asked questions during his trial testimony via a new interpreter.

Defendant Chin, who used an interpreter, also cites to cultural and linguistic differences as grounds for withdrawal, as well as his advanced age.[2] Support for Mr. Chin's motion comes largely from the affidavit submitted by his attorney at the time of his hearing. Mr. Chin's former attorney avers that at the time of Mr. Chin's hearing, she believed his plea was knowing and

---

1. Both defendants are now represented by different counsel than at the time of their hearings.

2. Mr. Chin was 84 at the time of his plea hearing.

voluntary, but that subsequent discussions with Mr. Chin indicated it was not. Specifically, she avers that prior to trial Mr. Chin told her that he did not understand he would be regarded as a criminal, and told her to go to trial clear his name and to appeal. Between May and September, she deliberated with Mr. Chin as to whether to file for withdrawal of his plea, a procedure made difficult by his inability to understand the consequences of his options. This situation was reported to Mr. Chin's probation officer in August.

Mr. Chin's attorney also cited to two additional factors which support his motion. First, she attests that in her conversations with Mr. Chin, she has observed noticeable short term memory loss on his part. Further, she believes her conversations with Mr. Chin were further handicapped by his unwillingness to express disagreement, a Chinese cultural trait.

### ANALYSIS

■ The decision to permit withdrawal of a guilty plea rests within the sound discretion of the trial court. *U.S. v. Knorr*, 942 F.2d 1217, 1219 (7th Cir.1991). The court may permit the withdrawal of a plea of guilty before sentence is imposed upon a showing by the defendant of any fair and just reason. Fed.R.Crim.P. 32(d). If the defendant establishes a fair and just reason, the court must then consider whether the government would be prejudiced by withdrawal. Fed.R.Crim.P. 32(d) advisory committee's note. Although the phrase "fair and just" is, to say the least, "lacking in scientific exactness," some guiding factors are apparent, such as the movant's assertion of innocence, the reasons asserted for not putting forward a defense at the time of pleading and the amount of time between the plea and the motion to withdraw. *Id.*

Prior to 1983, the prevailing view was that any desire to withdraw a plea before sentencing constituted a fair and just reason for withdrawal. The advisory committee's note to the 1983 revisions to the Rules of Criminal Procedure make it clear that revisions to Rule 11 make this view unten-

able. The 1974 revisions to Rule 11 require the trial court to make a record of the plea agreement proceedings, and to make inquiry as to whether the plea was made voluntarily, and with an understanding as to its contents and consequences. Fed. R.Crim.P. 11(c), (g). The care imposed upon the court by these revisions removes any remaining notion of a plea of guilty as a tentative gesture by the defendant.

■ One fair and just reason justifying withdrawal of a guilty plea is that it was not made voluntarily. *U.S. v. Ellison*, 835 F.2d 687, 692–93 (7th Cir.1987), *cert. denied*, 479 U.S. 1038, 107 S.Ct. 893, 93 L.Ed.2d 845 (1986). A defendant's plea must be voluntarily both in the sense that it was not coerced, and that the defendant understood the nature of the charges pled to. *U.S. v. Fountain*, 777 F.2d 351, 355 (7th Cir.1985). This merely restates the obvious proposition that a fair and just reason for withdrawal is that the plea was unconstitutionally obtained. *See Brady v. U.S.*, 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970) (plea, as waiver of constitutional rights, must be made voluntarily, knowingly and intelligently). It is this ground defendants rely on for withdrawal, claiming that linguistic and cultural differences rendered their pleas insufficient under both Rule 11 and the Constitution.

■ The government argues that *Ellison* and *U.S. v. Scott*, 929 F.2d 313 (7th Cir.1991) stand for the proposition that if a plea is entered in compliance with Rule 11, a defendant may not later contradict his sworn testimony at the plea hearing or sworn statements in his plea agreement. In the first place, this argument is irrelevant, since defendants contend their pleas were not entered in compliance with Rule 11. In the second, *Scott* and *Ellison* stand for a narrower proposition than the government claims.

The defendant in *Ellison* attempted to withdraw his plea alleging that he deliberately lied at his plea hearing in the mistaken belief that he could recant his plea later. *Ellison*, 835 F.2d at 693. The defendant in *Scott* sought to withdraw his plea because

he incorrectly estimated his sentence according to the Sentencing Guidelines. *Scott,* 929 F.2d at 315. Hence in both cases defendants sought to withdraw their pleas because future events did not conform to their "secret expectations" *Id.* The Constitution and Rule 11 do not allow withdrawal for strategic reasons. *Brady,* 397 U.S. at 757, 90 S.Ct. at 1473; *U.S. v. Hurtado,* 846 F.2d 995, 997 (5th Cir.), *cert. denied, Aguas v. U.S.,* 488 U.S. 863, 109 S.Ct. 163, 102 L.Ed.2d 133 (1988). The present defendants' cases are distinguishable because they claim they genuinely did not understand the nature of the charges against them, or the legal consequences of pleading guilty to them.

The government also argues that a motion for withdrawal cannot challenge the sufficiency of the government's evidence. The appropriate response to this argument is that defendants do not seek to challenge the court's determination of the factual basis for their pleas pursuant to Rule 11(f), but seek to assert their innocence, and show a lack of substantial prejudice to the government from withdrawal. A defendant must be able to contest his prior admission of guilt in his motion to withdraw, or the purpose of the motion would be meaningless. In any event, a counseled plea of guilty is only a reliable admission of factual guilt when intelligently and voluntarily made. *Menna v. New York,* 423 U.S. 61, 62, N. 2, 96 S.Ct. 241, 242, N. 2, 46 L.Ed.2d 195 (1975).

Finally, the government argues that allowing defendants' motions to withdraw will open the floodgates to all foreign born defendants with language difficulties, citing *U.S. v. Alvarez–Quiroga,* 901 F.2d 1433, 1439 (7th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 203, 112 L.Ed.2d 164 (1990). The defendant in *Alvarez–Quiroga,* however, never cited cultural and linguistic barriers as grounds for withdrawal. He argued his plea was not made voluntarily and intelligently made because it was made out of fear that his wife and son would be jailed, and because his appointed counsel gave him erroneous advice. *Id.,* at 1436. Allowing linguistic and cultural barriers as a fair and just reason for withdrawal will not flood the courts with a spate of Rule 32(d) motions. Instead, it will require district courts to take adequate care that these barriers are overcome during a defendant's plea hearing.

*Defendant Leung*

Defendant Leung's claim of linguistic and cultural differences causing a lack of understanding constitutes a fair and just reason for withdrawal of his prior plea of guilty. In determining whether a plea should be withdrawn on the ground that it was not given voluntarily or intelligently, a trial court must of necessity turn to its colloquy with the defendant at his plea hearing. *Ellison,* 835 F.2d at 693; *Fountain,* 777 F.2d at 355 (more meticulously Rule 11 is adhered to, the more it discourages frivolous attacks on constitutionality of pleas). The extent of the dialogue required between the court and the defendant to establish an intelligent and voluntary plea varies from case to case, but in all cases it must be a meaningful dialogue. Simple yes or no answers, or answers which merely mimic the indictment will not suffice. The court should question the defendant in a way that provokes a narrative response. *Fountain,* 777 F.2d at 356.

The record of Dr. Leung's plea hearing supports his claim that linguistic and cultural difficulties hampered his understanding of the proceedings. There was apparently some difficulty with translators. Dr. Leung informed the court of his linguistic and legal handicaps at the time of his hearing. Later, when questioned by the court as to the evidence constituting the charges against him, Dr. Leung responded with a narrative statement. He stated that he worked for the gambling operation, gave his weekly salary, described his duties of cashing chips, and collecting gambling proceeds and reporting them to the On Leong treasurer. In retrospect, this statement reveals a lack of an adequate understanding by Dr. Leung of the nature of the charges he was pleading to and in particular a failure to admit to the RICO conspiracy charged in Count I.

At trial, as part of Dr. Leung's testimony, there was clearly a genuine forceful denial of his guilt particularly under Count I, and a forceful denial of understanding the details of his plea. In the court's opinion, Dr. Leung did misunderstand his plea agreement.

*Defendant Chin*

■ The record of Mr. Chin's plea hearing does not demonstrate a meaningful dialogue between the court and the defendant. In the only instance where Mr. Chin gave a narrative response, describing his education, he showed an unfamiliarity with the American term "tutor." This only confirms his lack of cultural understanding.

There is no other evidence to contradict Mr. Chin's claim that linguistic and cultural barriers led to his misunderstanding his guilty plea and its consequences. The government contends that Mr. Chin's business interests in the United States, running Chinese restaurants and importing Chinese movies, show a familiarity with American language and culture. These businesses can be and are largely conducted using the Chinese language, and demonstrate more of a desire to transplant the Chinese culture than to absorb the American. The court credits the affidavit of the former attorney of Mr. Chin, submitted in support of his motion, which attests to his lack of understanding of the nature and consequences of his plea.

CONCLUSION

Each defendant, having shown a fair and just reasons for withdrawal of his plea, the burden shifts to the government to show that it would be prejudiced by granting leave to withdraw. 3 Wright, Federal Practice and Procedure § 538, p. 204 (1982). The government has made no attempt to demonstrate prejudice.[3]

For the foregoing reasons, in the exercise of the court's discretion in the interests of justice, both Chi Chak Leung's mo-

tion and Irving Chin's motion to withdraw their respective pleas of guilty are granted.

---

**3.** At trial of the other defendants in the case, the jury was unable to reach a verdict on Counts I and II of the indictment. Since the government has announced it will retry the other defendants on Counts I and II, it cannot show prejudice in any event.